480 So.2d 683 (1985)
Charles Richard MARTIN, Appellant/Cross-Appellee,
v.
Judith Kay MARTIN, Appellee/Cross-Appellant.
No. 84-920.
District Court of Appeal of Florida, Fifth District.
December 26, 1985.
*684 Isham W. Adams and Garrett L. Briggs of Adams & Briggs, Daytona Beach, for appellant/cross-appellee.
Charles Tindell of Charles Tindell, P.A., Daytona Beach, for appellee/cross-appellant.
DAUKSCH, Judge.
The former husband appeals from an order modifying the child support provisions of a final judgment of dissolution of marriage. We reverse[1] because the evidence adduced below does not support an increase of appellant's obligation from $300 per month to $1,200 per month.
In her financial affidavit, the former wife listed the amounts she is required to spend on a regular basis for the benefit of the parties' child. Each month, the former wife spends $120 for the child's clothes, $100 for his recreation, $186 for his transportation, and $100 on incidentals; a total amount of $506 per month. Additionally, the court found in the final order that the parties' child should contribute $400 per month as his share of the mortgage payments on the house he occupies with his mother and stepfather. We know of no case law or logic which would require a child to pay a share of his mother's and stepparent's mortgage payments. Would the child build an equity of some sort in the property? Would the father, who really pays the "share," gain an equity? Would either of them enjoy a deductible mortgage interest expense?
The duty to support children of a dissolved marriage does not rest exclusively with the noncustodial parent. § 61.13(1), Fla. Stat. (1983); Condon v. Condon, 295 So.2d 681 (Fla. 1st DCA 1974). Both natural parents share this duty. Id. When providing for the support of minor children in dissolution proceedings, trial courts should impose support obligations in accordance with the circumstances of the parties and the equitable aspects of the case. § 61.13(1), Fla. Stat. (1983). The factors listed in Peak v. Peak, 411 So.2d 325 (Fla. 5th DCA 1982) are illustrative of this determination.
Although the evidence shows that the parties' child requires at most $506 per month, the court ordered appellant to pay $1,200 per month. The final order of modification indicates that the court arrived at this amount based upon its determination that such amount equals approximately 20% of appellant's "spendable" income. In Rook v. Rook, 469 So.2d 172 (Fla. 5th DCA 1985) (en banc), this court receded from any indication in Menendez v. Menendez, 435 So.2d 287 (Fla. 5th DCA 1983), review denied, 441 So.2d 632 (Fla. 1983) that we have adopted certain percentage guidelines which trial courts must follow when providing for child support in domestic relations cases. The income percentages referred to in Menendez should be considered only as another of the enumerated factors set out in Peak. In reversing, we note that our decision in Rook was not available to the trial court at the time it entered the order under review. We remand the case to the trial court for further proceedings and consideration in accordance with this opinion. Upon reconsideration the trial judge may reconsider the bases upon which the award was made, including the rental share. In addition, the court should closely examine the evidence in support of the $120 per month clothing expense, $100 per month "incidentals" and the transportation expense.
REVERSED and REMANDED.
THOMPSON, E.R., Associate Judge, concurs.
SHARP, J., dissents with opinion.
*685 SHARP, Judge, dissenting.
I dissent because although the appealed order increasing child support from $300.00 per month to $1,200.00 per month was on the generous side, it was well within the trial judge's discretion, based on the evidence in this case. Brown v. Brown, 472 So.2d 873 (Fla. 2d DCA 1985). The test is whether the trial judge abused his or her discretion; and whether no reasonable person could agree with the appealed order. Marcoux v. Marcoux, 464 So.2d 542 (Fla. 1985); Vandergriff v. Vandergriff, 456 So.2d 464 (Fla. 1984); Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). Trial judges have very broad discretion in setting child support in Florida,[1] and it is as yet unfettered by guidelines. Rook v. Rook, 469 So.2d 172 (Fla. 5th DCA 1985). However, if the majority opinion in this case prevails, it could well be said to have established the per se outer limits of reasonableness for child support awards in this appellate district.
The trial court in this case took testimony for one day and considered numerous exhibits. It then wrote a well-considered opinion with fact findings, which are clearly supported by the record. I disagree with the majority opinion which remands this cause for "further consideration." This case was well tried and considered in the first instance.
The trial judge's order states, in part,
The Court finds, that the child is now 14 years of age, in good health, and is now living with the mother in Chicago, Illinois, where she lives with her present husband since August 1982. Richard is attending a private school which costs approximately $625.00 per month. His mother felt that since they live in downtown Chicago, that the public schools were overcrowded and not suitable for her son's education and therefore enrolled him in a private school. The Court finds, that the father of Richard is not required to provide funds to pay tuition for his son's education for a private school, nor is he required to pay for private tutoring ([Ternes v. Ternes, 58 App.Div.2d 763] 396 N.Y.S.2d 245 [(1977)] and [Flushing National Bank v. Municipal Assistance Corp., 40 N.Y.2d 1088] 392 N.Y.S.2d 392 [360 N.E.2d 1075 (1977)]). Although this Court could determine that it should be provided, Ault v. Ault, 8 FLW 137.
* * * * * *
The Court finds, that the father is entitled to have ten weeks summer vacation as stipulated to by the parties. That the father is to provide to his son facilities during this time, to make reasonable phone calls to his mother and maternal grandparents. That, the father is responsible to pay for the travel expenses for his son's visitation. The Court finds, that the father is not required to pay child support while his son visits with him during the summer months, but is required to pay child support during any other visits.
* * * * * *
She further seeks in her petition, the payment on back alimony payments, this request was withdrawn at the final hearing. She asked for an increase in the child support payments, which the Court finds she is entitled to. The testimony revealed that the petitioner was employed in her husband's business, and received a salary of $8,200 in 1983.
On September 27, 1974, the father agreed to pay $300.00 per month as child support in the property settlement agreement. He was making approximately $40,000.00 per year. The father later voluntarily increased this amount to $600.00 monthly, plus $50.00 allowance for his son since September, 1982. The respondent is a medical doctor specializing in radiology.
It appears that the father's income is as follows:

*686
 Annual Income Withholding Tax F.I.C.A.
1981 149,328 50,436 1975
1982 131,572 36,636 2170
1983 151,883 41,515 2391
 (includes $10,000
 bonus)

The Court finds that the father has the ability to pay an increase in child support payments as set forth by the factors that should be considered in Peek v. Peek [Peak v. Peak], 411 So.2d 325, and in Flynn v. Flynn, 433 So.2d 1037 [(Fla. 4th DCA 1983)]. The Court, also, has considered the effect of inflation factor, in reference to the needs to provide the necessities for his son, as provided for in Powell v. Powell, 386 So.2d 1214 [(Fla. 3rd DCA 1980)]. The Court has considered the guidelines in Aycook, [sic] Vol. 8 AFTL No. 29, Pg. 1835 and Menderez, [sic] 5th DCA, Case No. 82-1491, Filed June 21, 1983.
The Court finds, that the father has a comfortable life style owning a house assessed at $130,000, with a mortgage of $85,000, with two autos, a van, several motor bikes, and three small boats.
The Court, also, has considered that the former wife decided to move from Augusta, Georgia, where her parents lived, to re-marry and live in Chicago, Illinois, which increased the problem for the father's visitation rights, as well as increased travel expenses for his son's visits with him.
The Court finds, petitioner alleges that the respondent's current income is:

$141,833 Salary
 10,000 Bonus
 16,795 Portfolio Valuation (Average)
 4,179 Volusia Health Association
 3,625 Rental Income
________
$177,132
 LESS $ 35,700 Withholding Tax
 2,391 Social Security
 ______
 -38,091
________
$139,040 SPENDABLE INCOME

Also, added $17,399 to his retirement portfolio, 20 percent of this would be approximately $2,300. However, the 1982 income tax return of the respondent indicates:

$124,392 Salary
 1,353 Portfolio Valuation (Average)
 3,138 Volusia Health Association
 2,469 Rental Income
________
$131,352
 LESS $ 43,093 Withholding Tax
 2,391 Social Security
 ______
-45,484
_______
$ 85,868 SPENDABLE INCOME

and that, 20 percent would be $1,400 per month.
* * * * * *
This Court finds that since the respondent is responsible for his child's needs for medical and dental expenses, including orthodontic work, and the education for his son in college in the future, by establishing a trust fund to maintain his insurance policy in the amount of $50,000.00 for the benefit of his son; and, to provide for travel expenses from Chicago, Illinois to Florida for his son's visitation trips; the respondent's pension contribution. The Court finds that the respondent's net expendable income would be sufficient to provide as a reasonable child support to be the sum of $1,200 per month.
The Court finds that the father, as previously stated, is not required to provide funds for a private school. Therefore, the Court finds that according to the child's mother's financial statement executed on March 12, 1984, for her son's need, she asked for:

$ 30.00 Clothing
 25.00 Incidentals
 46.00 Transportation
 25.00 Recreation
 _____
 125.00 [*]Weekly
 40.00 1/3 for food of $120.00
 30.00 1/3 for utilities of $89.00
 ______
 196.00
 100.00 House payments  child's part
 ______
$296.00

She listed in her affidavit for rent, or to make house payment for three people the sum of $1,023.00. She listed the value of their house to be $270,000 with a real estate mortgage on it of $273,000.

*687 The Court finds, that it would be unreasonable to consider that one-third of this amount should be allocated for the child's housing. The Court finds that $400.00 per month would be a reasonable amount for the child's part toward the house payment.
The Court finds that, the child support payments be increased from $300.00 per month, as per the agreement and voluntarily increased later to $650.00, to $1,200 per month, beginning March 1, 1984, until the child reaches 18 years of age.
The appellee had originally sought a much larger sum for child support, and she cross-appealed as error the trial court's refusal to award her $2,500.00 per month. Her proofs at trial showed in excess of $1,500.00 per month was being spent on the fourteen year old son of the parties in this case. Her proofs were uncontroverted. Is it proper now for us to remand so that they can be challenged?
However, the trial court refused to impose on appellant any of the private school costs. Tuition alone exceeded $5,000.00 per year.[2] And, it reduced the child's "housing" expenses for an apartment in an exclusive downtown Chicago neighborhood, from $341.00 per week, to $100.00 per week.
The court found that a total of $296.00 per week in expenses pertaining to this child should be paid by appellee, to maintain him at a standard of living commensurate with appellee's own present lifestyle and income.[3] This per week sum is roughly equivalent to the $1,200.00 per month figure which the court in fact awarded as child support. But this figure should be reduced because child support was only awarded to appellee for nine months of the year, although some expenses such as clothing and housing (appellee testified) were on-going throughout the year.
The majority opinion's statement that the evidence shows this child only requires $506.00 per month to meet his expenses is clearly erroneous. The $506.00 figure was arrived at by considering only expenses for clothing, incidentals, transportation and recreation. If the amounts proved in appellee's financial affidavit, and found by the trial judge in his opinion pertaining to costs for food, and a portion of the utilities and housing costs are included, the proper figure is $296.00 per week.
Further, the trial court did not require the child to pay a share of the mortgage payments on his mother's and stepfather's apartment. As the trial judge's written opinion sets forth, he was attempting to allocate a reasonable sum for housing or shelter expense. He rejected one-third of the actual cost of the apartment as being excessive; and found that $100.00 per week was a reasonable amount. The cost of housing or shelter is clearly a proper factor to use in calculating support needs in alimony and child support cases.
In sum, appellant was required to pay $10,800.00 per year in child support. At the time of the modification proceeding, his financial assets and income were substantial. For example, in 1983 he contributed $17,397.15 to his retirement portfolio. The trial court found his net spendable income was $85,868.00 per year. The child support obligation set by the trial court was therefore considerably below the twenty percent range this court has approved in other cases. Aycock v. Aycock, 433 So.2d 680 (Fla. 5th DCA 1983); Menendez v. Menendez, 435 So.2d 287 (Fla. 5th DCA), review denied, 441 So.2d 632 (Fla. 1983).
In addition, I take issue with the majority opinion's inference that the trial judge erred in this case by not compelling the appellee to assume "equal" support for the child. Appellee only earns $8,200.00 per year. The whole of that sum will be required to pay the additional expenses pertaining to the child alone (school and housing costs) that appellant is not being required to pay.
*688 The testimony at the trial was that the public schools in downtown Chicago are poor and not adequate for this child. He is bright and highly motivated. He has always attended private schools since kindergarten, and is obviously college bound and beyond. The trial judge said he would not require appellant to pay the private school costs, although he could have done so. See Haass v. Haass, 468 So.2d 1053 (Fla. 4th DCA 1985); Ault v. Ault, 431 So.2d 302 (Fla. 2d DCA 1983); Jelke v. Jelke, 233 So.2d 408 (Fla. 3rd DCA), cert. denied, 238 So.2d 107 (Fla. 1970). This was a recognition by the trial court that for this child living in downtown Chicago, private school expenses were a reality and necessity.[4] Those considerable costs will now have to be met, if at all, by appellee's resources, which if totally applied, will be inadequate. She had been managing this with gifts and loans from her parents.
In my view, where a father's income and fortunes have flourished and quadrupled, as in this case, a child is entitled to share in his good fortunes by being maintained in a commensurate standard of living and lifestyle.[5] This may include some luxuries as well as necessities. See Smith v. Smith, 474 So.2d 1212 (Fla. 2d DCA 1985); Haass v. Haass; Hendry v. Hendry, 340 So.2d 942 (Fla. 4th DCA 1976). Both parents should support the child, to the extent of their present abilities.
The order entered in this case achieves this goal. It does not exceed appellant's ability to pay, but it leaves appellee with substantial uncovered financial expenses for the child that she will have to meet as the custodial parent. Some of these expenses were the result of her opting to remarry and relocate in downtown Chicago. The trial court reached a fair and reasonable result, and accordingly I feel strongly the appealed order should be affirmed.
NOTES
[1] The former wife's cross appeal is therefore moot.
[1] Frumkes v. Frumkes, 349 So.2d 823 (Fla. 3rd DCA 1977).
[2] The appellant's financial affidavit established the cost at $547.19 per month.
[3] None of these expenses were challenged by appellant.
[4] This child had attended private school since kindergarten, with appellee's knowledge and consent; appellee's only objection to the school in Chicago was to its expense.
[5] Howard v. Howard, 468 So.2d 310 (Fla. 5th DCA 1985); Wanstall v. Wanstall, 427 So.2d 353 (Fla. 5th DCA 1983); Johnson v. Johnson, 386 So.2d 14 (Fla. 5th DCA), review denied, 392 So.2d 1375 (Fla. 1980).